**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

GERALD D. FULLER                              *

Plaintiff                                            *

v.                                                      *          Civil Action No.WMN-14-1474

WARDEN BOBBY SHEARIN, *et al*.         *

Defendants                                      ***

**<u>MEMORANDUM OPINION</u>**

Pending in the above-captioned case is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 16.  Plaintiff opposes the motion.  ECF Nos. 27 and 32.  In addition, Plaintiff has filed Motions for Injunctive Relief, for Protective Order, to Compel Discovery, and to Appoint Counsel.  ECF Nos. 23, 25, 26, and 28.  The Court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted and Plaintiff's pending motions denied.

**Plaintiff's Claims**

Plaintiff, an inmate incarcerated at North Branch Correctional Institution ("NBCI"), claims that on July 11, 2012,  Lt. Manuel was leading a group of correctional officers, all of whom were white, in searching inmates as they exited the dining hall.  ECF No. 1 at p. 5.  He asserts that the "white prisoners" who were stopped and searched were permitted to return to their housing units, but the "Black prisoners" were placed on the fence to be searched.  *Id*. Plaintiff does not provide information concerning how he observed this to be the case.

When Plaintiff left the dining hall, he claims he was called "shine" by Lt. Manuel, who ordered Plaintiff to come back to where he was standing.  *Id*.  Plaintiff states he asked what he

had done and, in response, was "roughly handcuffed." *Id*.  Plaintiff told Manuel he had a medical order for front cuffing and that he walked with a cane.  He states he was then dragged and carried to segregation.  Once in the segregation unit, Plaintiff alleges he was subjected to a strip search which was video-recorded.  Plaintiff claims he was told to strip and ordered to bend at the waist and "hold his anus rectum open under threat of violent force." *Id*.  He further alleges that the officers, who he describes as "white guards," took turns shining a light into his rectum while making comments.  *Id*.  Plaintiff was then placed on segregation and he claims all of his property was "pepper sprayed by unknown staff members."  *Id*.

On July 24, 2012, Plaintiff claims he was denied an attorney visit from counsel in a pending criminal case.  He claims that his attorney was told she would not be able to see Plaintiff due to a disturbance in Plaintiff's housing unit.  The referenced disturbance arose, according to Plaintiff, because he refused to go to an adjustment hearing in lieu of his attorney visit.  He states that after he was convinced that he would not be allowed to visit with his attorney unless he first went to the adjustment hearing and that staff were prepared to forcibly extract him from his cell, he "relented." *Id*.  He asserts that Sgt. Wedlock and an unknown female officer compelled him to plead guilty to all of the rule violations in exchange for the attorney visit.  Plaintiff was unaware that his attorney had already left the prison by that time.  *Id*.

Plaintiff maintains that the searches that occurred outside of the dining hall, as well as the subsequent strip search, were video and audio recorded.  He requested the video be presented at the adjustment hearing and because it was not presented, Plaintiff appealed the adjustment conviction to the warden.  The appeal was denied and additional sanctions were added. *Id*.  Plaintiff then appealed the proceeding to the Inmate Grievance Office ("IGO"). *Id*.

At the IGO hearing Plaintiff claims Manuel alleged that when Plaintiff held out his hands to be cuffed while still holding his cane and asking what he had done, Plaintiff had engaged in a rebellious act.  Plaintiff again asked for the video and audio recordings of both his encounter with Manuel and the strip search be produced at the IGO hearing.  At the time of his search, no contraband was found in Plaintiff's possession.  *Id.* at p. 6.  Plaintiff appealed the IGO's denial of his appeal to the Circuit Court for Allegany County.  *Id.*  His appeal was dismissed for failure to file a memorandum in support of this petition, but Plaintiff claims he did in fact file the required memorandum.  *Id.*

### Defendants' Response

Defendants provide as evidence a copy of the Administrative Law Judge's ("ALJ") decision regarding Plaintiff's appeal of an Administrative Remedy Procedure complaint ("ARP") concerning his allegations that Manuel and other correctional officers targeted black inmates for searches on July 11, 2012.  ECF No. 16 at Ex. 2.  Initially the hearing was postponed because Plaintiff's requests for witnesses and for production of the video recording of the incident, while timely filed, had not been received by the IGO.  The ALJ required the institutional representative, Randy Durst, to either produce the video or explain its absence.  *Id.* at p. 2.  Upon receipt of an affidavit from Lt. James Coleman dated January 22, 2013, it was established that no such video existed.  *Id.* at p. 2, n. 1.

The findings of fact reached by the ALJ[1] include that Plaintiff is black, uses a cane to walk, and was the subject of a medical order for front-cuffing issued on September 30, 2011.  *Id.* at p. 6.  During meal times approximately seventy to eighty inmates enter, then exit the dining hall in columns of one or two inmates.  Inmates are prohibited from taking commissary items into the dining hall, but are permitted to bring educational material with them if they are coming

---

[1]  Defendant Manuel adopts the findings of fact as set forth by the ALJ in her decision.

directly from school.  Additionally, inmates are not permitted to take food out of the dining hall, but the rule regarding permitted items coming into or leaving the dining hall is not routinely enforced.  *Id.*

On July 11, 2012,  Lt. Manuel, who is white, conducted a visual search of inmates as they exited the dining hall for purposes of detecting contraband.  When anything about an inmate's appearance led him to believe he may be carrying an item out of the dining hall, that inmate was stopped and asked to step to the side for a search.  Manuel explained that stopping an inmate had to be done quickly in order to avoid interrupting the procession out of the dining hall and potentially creating a security threat through disruption of a routine.  A team of approximately five correctional officers were working with Manuel in stopping inmates for searches.  *Id.* at p. 7.

Manuel stopped seven to ten inmates for a search on July 11, 2012.  Plaintiff exited the dining hall with another inmate, Andre Pearson, who is also black.  Plaintiff was called by Manuel to be searched because his "shirt pocket was not flat against his shirt."  *Id.*  Because Pearson did not appear to have anything in his pockets, he was not called back for a search. When Plaintiff was called by Manuel, he appeared to be annoyed at having been stopped. Plaintiff moved toward Manuel, thrust his arms back and forth toward Manuel while holding his cane, and exclaimed loudly that he was being harassed.  Plaintiff also yelled, "lock me up."  *Id.*

Sgt. Randall Rase, who is white, observed Plaintiff's interaction with Manuel and, in an effort to squelch a possible disturbance, moved in to handcuff Plaintiff.  When Rase asked Plaintiff to put his hands behind his back, Plaintiff insisted he must be cuffed in the front. Manuel then grabbed Plaintiff's hand and moved it behind his back so that Rase could handcuff him.  Upon searching Plaintiff, he was found to have a piece of paper in his pocket related to one of his legal proceedings and was not charged with possession of contraband.  Plaintiff was,

however, charged with violating rules regarding disruptive behavior and interfering with an officer in the performance of his duty.  Plaintiff was the only inmate who did not cooperate with Manuel's search team.  *Id.* at p. 8.

Manuel also called John Dean, an inmate who is white, back for a search because it appeared he had something in his pockets.  Dean complied with the search and was found to have "a ball of oatmeal and a card" in his pocket.  *Id.*  After Dean produced those items, he was permitted to leave.  Dean, who testified at the IGO hearing, also observed other black inmates being stopped for searches.  *Id.*

In analyzing the facts found, the ALJ concluded that the searches performed were legal and that all of the inmates who testified were aware of the rule against taking contraband in and out of the dining hall.  *Id.* at p. 10.  During the course of the hearing, Plaintiff admitted he had not seen Dean being searched and the ALJ observed that Plaintiff produced no evidence that "'white boys' with 'bulging pockets' were permitted to pass without being pulled out of line." *Id.*  Further, the ALJ observed that, "it is entirely possible that . . .  other white inmates were stopped, searched, and released before [Plaintiff] could see those events, as demonstrated by the fact that  . . . Dean was stopped and [Plaintiff] did not witness it."  *Id.* at pp. 10 – 11.  Plaintiff's contention that he was singled out because he is a "strident black man" was also rejected by the ALJ because Manuel and Rase provided testimony that he was only handcuffed after he created a disturbance during a controlled movement, i.e., inmates exiting the dining hall.  *Id.* at p. 11.  The ALJ further found that there was reasonable grounds to search Plaintiff as he admitted he had a piece of paper in his pocket, supporting Manuel's assertion he was called because of the appearance of his pocket and not the color of his skin.  *Id.*  at pp. 11 – 12.  As to Plaintiff's assertion, also made in his Complaint filed in this case, that Manuel called him "Shine," the ALJ

observed that neither Manuel nor Rase were familiar with the term and have never used it.[2]

Additionally, Plaintiff admitted he could not hear Manuel when he called him the first time and

failed to produce any witness to corroborate the claim a racial slur was used by Manuel.  *Id*. at p.

12.  The ALJ also observed that the use of a racial slur alone did not make the actions of Manuel

or Rase "inconsistent with the law."  *Id*.

Defendants also provide as evidence the decision by another ALJ concerning Plaintiff's

claim he was deliberately prevented from seeing his attorney on July 24, 2012.  ECF No. 20 at

Ex. 7.  The facts found by the ALJ concerning that incident largely mirror Plaintiff's allegations

raised in his Complaint.  His attorney, Jennifer Bushman, who was representing Plaintiff in a

pending criminal charge in Somerset County, came to NBCI on July 24, 2012, for a legal visit.

After Plaintiff was informed he had a legal visit, correctional officers arrived to escort Plaintiff to

a hearing for a pending notice of infraction.  Plaintiff initially refused to go to the disciplinary

hearing and argued with staff because he did not want to miss his legal visit.  *Id*. at p. 3.  The

escort officer encouraged Plaintiff to go to the hearing by telling him it would go quickly, but

Plaintiff continued to argue and refuse to leave his cell, escalating the confrontation.  *Id*. at p. 4.

Plaintiff went to his disciplinary hearing and correctional staff discussed whether he

should stay for the hearing or be taken to his legal visit, but according to Defendants, Plaintiff

agreed to proceed with the hearing.  He entered a guilty plea to the three rules he was charged

with violating and did not request a postponement of the hearing.  During the time it took to

resolve Plaintiff's initial refusal to leave his cell and the disciplinary hearing, Plaintiff's attorney

left without seeing him.  The Prosecutor later entered a *nolle prosequi* motion for the criminal

charges pending against Plaintiff in Somerset County.  *Id*. at p. 4.  The ALJ found that there was

---

[2]   The Court takes judicial notice of the fact that "shine" is a racially offensive term used in a derogatory manner to refer to members of the African American race.  The term is perhaps less commonly used in current times as its origin is derived from "shoeshiner."  *See http://en.wikipedia.org/wiki/List_of_ethnic_slurs#S.*

no evidence that any of the correctional staff engaged in a coordinated effort to deprive Plaintiff of his legal visit in order to force him to communicate with his attorney through the mail as he alleged. *Id*. at p. 5. Specifically, Sgt. Wedlock testified as a witness for Plaintiff and explained he was in charge of scheduling hearing for notices of infraction on the date of this incident, but that he was not privy to other scheduling information or information about legal visits. *Id.* at pp. 5 – 6. Additionally, the evidence presented established that Plaintiff's attorney picked the time and date for the visit, but that it had been approved by NBCI staff. *Id*. at p. 6. Also absent from the evidence presented by Plaintiff was information as to how long his attorney waited or any indication made by her to NBCI staff that her visit was urgent. Nor was any evidence adduced suggesting that Plaintiff would not have been taken to see his attorney had she remained at the prison. *Id*.

Defendants move to dismiss or, in the alternative, for summary judgment on the grounds that (1) Plaintiff's claim regarding the strip search was not exhausted through the administrative remedy procedure and must be dismissed, ECF No. 16-1 at pp. 7-9; (2) there was no disparate treatment or racial intent in Lt. Manuel's conduct amounting to a Constitutional violation, id. at p. 9-10; and (3) the July 24, 2012, incident in which Plaintiff missed an attorney visit to attend disciplinary proceedings did not violate his right to due process or access to an attorney. Id. at 11-12.

**Plaintiff's Pending Motions**

<u>Discovery</u>

Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:

(1) Defer considering the motion or deny it;

(2) Allow time to obtain affidavits or declarations or to take discovery; or

(3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'"  *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995);

*see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008).

In his Motion to Compel Discovery (ECF No. 26), as well as correspondence filed seeking production of documents (ECF Nos. 20 and 24), Plaintiff maintains that "video and audio records clearly support the factual claims that Plaintiff made no offensive movements when holding out his arms with the cane in his hand to be handcuffed." ECF No. 20 at pp. 1 -2. Plaintiff further maintains that the video will support his assertion that black inmates were treated more harshly and were more likely than white inmates to be searched and detained. He also claims the video has been deliberately suppressed and the ALJ at his grievance hearing "refused to order the agency to produce these records." Id. at p. 1. Plaintiff also seeks to introduce the audio recording of his adjustment hearing to establish that he was forced to plead guilty. Finally, Plaintiff claims the strip search he was subjected to was video recorded and would establish his claims of harassment.

Plaintiff's characterization of the ALJ's actions regarding the asserted video recording of the searches is inaccurate. The administrative hearing was postponed with directions to the staff at NBCI to either produce the video or explain its absence. In an audio recording of the initial hearing that resulted in a postponement, which Plaintiff filed as an exhibit, it was explained by Randy Durst that the surveillance videos are not archived if no serious incident occurs. ECF No. 32 at Ex. X-1. Durst further explained that the video is collected on a device much like a DVR used in a person's home and that the institution does not have the technology to preserve all video surveillance. Id. After Durst assured the ALJ he would check to see if the video existed, it was established that the video had not been archived. There is no reason to believe that the video is being suppressed or hidden; thus, any discovery request for its production is an exercise in

futility.  Moreover, other evidence presented by Plaintiff refutes his own assertion that only black inmates were searched.

Plaintiff's proffer that the audio tape of the adjustment hearing would establish his guilty plea was involuntary is not relevant to his Sixth Amendment claim that he was denied access to counsel.  For reasons discussed below, the facts as construed in a light most favorable to Plaintiff as the non-moving party establish that a constitutional violation did not occur.

Plaintiff's Request for Production of Documents (ECF No. 24) seeks in part his entire prison file and documents related to his removal from Patuxent Institution and subsequent denial of release on parole.  This request is clearly an effort to engage in discovery for the sake of discovery and is not specifically tailored to the issues pending in this case.

With respect to the strip search, Defendants have raised an affirmative defense that the claim has not been exhausted.  ECF No. 16.  Production of a video recording of the strip search will not refute the affirmative defense.

Plaintiff styles his motion as one to compel compliance with previously filed discovery requests.  The motion is not properly filed.  Motions to compel discovery are improperly filed if there is no evidence that (1) discovery has commenced; (2) an appropriate discovery request was made; (3) a response to the request was either not provided or did not comply with the request; and (4) informal efforts to resolve the dispute have failed.  *See* Fed. R. Civ. Proc. 26, *see also* Local Rule 104.8.  (governing procedure for motions to compel).  In the instant case there has been no scheduling order issued setting forth deadlines for discovery.  *See* Local Rule 803.1 (D. Md. 2014).  Plaintiff's Motion to Compel shall be denied.

Injunctive Relief

Plaintiff's Motion for Injunctive Relief concerns multiple allegations of harassment which includes his removal from Patuxent, denial of a reduction in his security level, and a denial of his release on parole.  ECF Nos. 23 and 22 (declaration in support).  The motion, as well as other pleadings filed in this case, contains allegations that all staff members at NBCI are white racists who intend to "break" Plaintiff.  ECF No. 22.  He seeks "protection from retaliation for pursuing this case."  ECF No. 23.  Plaintiff reiterates these claims in his Motion for Protective Order and adds that "agents and representatives of the Defendants in this case, intends (sic) to leave his cell door open so that the gangs can steal his word processor and other property."  ECF No. 25.  He again seeks the protection of this Court as relief.  *Id.*

A preliminary injunction is an extraordinary and drastic remedy.  *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Plaintiff's assertions regarding retaliation do not appear to be events without independent, legitimate causes.  To make out a prima facie case of retaliation, Plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of Defendants.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  In the prison context, Plaintiff must establish that the prison

authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *See Rizzo v. Dawson*, 778 F.2d 527, 532  n. 4 (9th Cir.1985).  The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532.  "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'"  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff's bald assertion that the entire staff at NBCI is racist is not enough to establish that every adverse action taken against him is unjustified.  Plaintiff does not deny violating the rules for which he received infractions.  Additionally, his claims that "plans" are made to set him up and suggest that he possessed contraband weapons, are simply conjecture and are not properly raised.  The issues regarding his transfer from Patuxent, denial of parole, and interference with medical care are not matters pending before the Court in this case.  Finally, his request for relief is so vague that fashioning an order to satisfy his request is unworkable.  The motion shall be denied.

### Standard of Review

<u>Summary Judgment</u>

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the
requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

<u>Exhaustion of Administrative Remedies</u>

The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional

conditions and suits alleging unconstitutional conduct).  Exhaustion is also required even though

the relief sought is not attainable through resort to the administrative remedy procedure.  *See*

*Booth v. Churner*, 532 U.S. 731, 741 (2001).  A claim which has not been exhausted may not be

considered by this Court.  *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

 Administrative remedies must, however, be available to the prisoner and this court is

"obligated to ensure that any defects in administrative exhaustion were not procured from the

action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th

Cir. 2007).  The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner,
> through no fault of his own, was prevented from availing himself of it.  *See*
> *Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v.*
> *Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006).  Conversely, a prisoner does not
> exhaust all available remedies simply by failing to follow the required steps so
> that remedies that once were available to him no longer are.  *See Woodford v.*
> *Ngo*, 548 U.S. 81, 89 (2006).  Rather, to be entitled to bring suit in federal court, a
> prisoner must have utilized all available remedies "in accordance with the
> applicable procedural rules," so that prison officials have been given an
> opportunity to address the claims administratively.  *Id*. at 87.  Having done that, a
> prisoner has exhausted his available remedies, even if prison employees do not
> respond.  *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

 Thus, Plaintiff's claim regarding the strip search must be dismissed, unless he can show

that he has satisfied the administrative exhaustion requirement under the PLRA or that

defendants have forfeited their right to raise non-exhaustion as a defense.  *See Chase v. Peay*,

286 F. Supp. 2d 523, 528 (D. Md. 2003).  The PLRA's exhaustion requirement is designed so

that prisoners pursue administrative grievances until they receive a final denial of the claims,

appealing through all available stages in the administrative process.  *Chase*, 286 F. Supp. 2d at

530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal

prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim

through all four stages of the BOP's grievance process); *Booth*, 532 U.S. at 735 (affirming

dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full

administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720,

726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest

possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002)

(prisoner must follow all administrative steps to meet the exhaustion requirement, but need not

seek judicial review).

 Other than stating that the affidavit of Scott Oakley, director of the Inmate Grievance

Office, is perjured, Plaintiff has provided no evidence that he properly exhausted administrative

remedies with regard to the strip search claim.  ECF 27 at p. 4.  Plaintiff claims the averment that

he only filed two grievances relevant to the matters asserted in the instant case is erroneous when

in fact he filed three grievances relevant to this case.  *Id.*  Plaintiff does not, however, explain

which of those grievances raised the claim asserted here that he was subjected to a strip search

during which inappropriate sexual remarks were made.  While mention is made of the strip

search in the audio recording of Plaintiff's initial IGO hearing which was postponed, the matters

considered in that case concerned the alleged racism in the selection of inmates to be searched.

Plaintiff did not raise the claim presented in the Complaint regarding the strip search, therefore,

the claim is not exhausted and must be dismissed.

### Analysis

 The Equal Protection Clause is "essentially a direction that all persons similarly situated

should be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)

(citation omitted).  To prevail under the Equal Protection Clause, Plaintiff "must prove the

decision makers in his case acted with discriminatory purpose."  *McCleskey v. Kemp*, 481 U.S.

279, 292 (1987).  Plaintiff does not have to prove "that the challenged action rested solely on racially discriminatory purposes . . . or even that a particular purpose was the 'dominant' or 'primary' one." *Arlington Heights v. Metropolitan Housing Dev. Corp*., 429 U.S. 252, 265 (1977).  Rather, all that is required for a finding of unconstitutional conduct is "proof that a discriminatory purpose has been a motivating factor in the decision." *Id*. at 265–66.  The Supreme Court has held that discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citation omitted).  In cases where there is evidence of overt racial classifications, "the government has the burden of proving that racial classifications 'are narrowly tailored measures that further compelling governmental interests.'" *Johnson v. California*, 543 U.S. 499, 505 (2005) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995)).

The only evidence provided by Plaintiff to support his claim that, as a black inmate, he was discriminatorily targeted for a search upon exiting the dining hall, is his subjective opinion regarding the "quality" of employees working at NBCI and his philosophical beliefs concerning the effects of the racial ratios between prisoners and correctional officers.  There is no evidence that Plaintiff was in a position to observe the entire search procedure to take note of any differences between how black and white inmates were treated.  To the contrary, there is evidence that Plaintiff did not observe the search performed on a white inmate who testified at Plaintiff's IGO hearing.  Plaintiff makes much of the fact he was not found with any contraband during the search; however, it is clear that Plaintiff was handcuffed and escorted away because of his belligerent discourse with the officers performing the search.

To the extent Plaintiff relies on the absence of contraband as evidence that the search was without legitimate cause, his reliance is misplaced.  The undisputed evidence establishes that Plaintiff had something in his pocket when he was leaving the dining hall and this was the justification for calling him back for a search.  There is no requirement for a showing of probable cause to justify a pat down search of an inmate in a prison setting.  *See Bell v. Wolfish*, 441 U.S. 520, 560 (1979) (holding body cavity searches of inmates may be performed on less than probable cause).  Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

Plaintiff's claim regarding the deprivation of one opportunity to meet with his attorney in person to discuss pending criminal charges is a claim he was denied his Sixth Amendment right to counsel.  It is well established that an absolute ban on visits with counsel or paralegals is a violation of a prisoner's right of access to courts.  *See Procunier v. Martinez*, 416 U.S. 396, 419 (1974) (striking a prison regulation that banned all interviews with paralegals as violative of prisoners' right of access to courts).  Such was not the case here; the undisputed facts in the instant record, read in a light most favorable to Plaintiff, establish that the visit with counsel did not occur because Plaintiff's attorney left after a long wait to see Plaintiff.  Part of that delay was caused by Plaintiff himself when he "created a disturbance" in his housing unit.  Thus, even if Plaintiff's allegation that he was forced to plead guilty to a notice of infraction in order to insure he could see his attorney is true, the fact remains the visit did not occur because his attorney left.

Additionally, the failure to meet with his attorney on this occasion did not result in an actual injury as the charges against Plaintiff were ultimately disposed of via a *nolle prosequi* motion.  An unconstitutional burden on a prisoner's right of access to the courts is not established where no actual injury occurs.  *See  Lewis v. Casey*, 518 U. S. 343, 355 (1996)

17

(requiring an actual injury to the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts).  Plaintiff has not alleged any actual injury accruing as a result of his missed legal visit.  Defendants are entitled to summary judgment on this claim.

A separate Order follows.


_____3/17/2015_____          _____/s/_____
Date                                                    William M. Nickerson
                                                           Senior United States District Judge